OPINION
{¶ 1} Defendant-appellant Darrell W. Sears appeals from his conviction and sentence, following a jury trial, for the offense of Theft, in violation of R.C. 2913.02(A)(2), by obtaining control over the property of Victor Parham, Sr., in the form of money, beyond the scope of Parham's consent. Sears contends that the evidence in *Page 2 
the record is insufficient to support his conviction, that his conviction is against the manifest weight of the evidence, and that the trial court committed plain error by failing to instruct the jury concerning the scope of consent, and concerning mistake of fact as a defense.
 {¶ 2} We conclude that there is sufficient evidence in the record to support the conviction, and that the conviction is not against the manifest weight of the evidence. We also conclude that the asserted deficiencies in the jury instructions, to which Sears did not object, do not rise to the level of plain error. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In September, 2005, Parham contracted with Sears to do some remodeling work in Parham's basement. Sears had done some work for Parham before.
 {¶ 4} Parham gave Sears a check for $800, with the balance of $850 to be paid on completion. There was discussion of additional work that Sears might perform for Parham later, but Sears admitted, in his testimony, that this was the subject of a separate contract that was never entered into.
 {¶ 5} A "coupla" days later, Donnie Rodgers, who was sometimes known to Parham as Donnie Mix, showed up at Parham's house and broke down a sink in the basement. Mix had been present with Sears when the contract had been entered into. While Rodgers was there, Sears showed up and dropped off a bag of cement. Sears testified that he had cashed Parham's check, and gave Rodgers $400 to buy materials *Page 3 
and start the work. Sears left immediately upon dropping off the bag of cement; Rodgers left after breaking up the sink in the basement. Neither Sears nor Rodgers returned to do any more work on the project.
 {¶ 6} Parham testified that no one called him to discuss the work, but that he called Sears twice, only to have Sears make "excuses" why he couldn't come back to do the work. Parham testified that he never told Sears not to complete the work, and that he never told Sears that he was going to get someone else to do the work (although Parham eventually did, in fact, hire someone else to do the work a year and a half later). None of the items listed in the contract were ever completed by Sears.
 {¶ 7} Parham complained to the Fraud and Economics Crimes Division of the Montgomery County Prosecutor's office. Nelson Grover, an investigator for the Ohio Division of Financial Institutions, met with Parham in November, 2005. Grover contacted Sears, and met with Sears in December, 2005. Grover testified that Sears told him that he and Rodgers had concluded that the job was underbid. Grover testified that he and Sears "left it with the agreement that he [Sears] was going to either go back and talk to Mr. Parham and renegotiate a higher bid price, . . ., or just give him [Parham] the full eight hundred dollars back." According to Grover, Sears agreed to call Grover to report the resolution of the controversy with Parham. As of the date of the trial, about two years later, Sears had not contacted Grover.
 {¶ 8} Sears denied that he told Grover he would either re-negotiate the contract with Parham or return the $800 to Parham. Sears testified that the problem was that Parham kept adding things to the scope of the contract work. In rebuttal, Grover again testified that Sears said that he would either renegotiate the contract with Parham, or *Page 4 
return the $800 to Parham. Grover also testified that Sears never mentioned any problem with Parham's adding to the scope of the work to be performed.
 {¶ 9} Sears was charged by indictment with two counts of Theft. The first count alleged a violation of R.C. 2913.02(A)(3) — theft by deception. The second count alleged a violation of R.C. 2913.02(A)(2) — theft by obtaining control of property beyond the scope of the consent of the owner. Following a jury trial, Sears was acquitted of the first count, theft by deception, but was convicted of the second count. Sears was sentenced accordingly.
 {¶ 10} From his conviction and sentence, Sears appeals.
 II {¶ 11} Sears's First, Second, and Third assignments of error are as follows:
 {¶ 12} "DEFENDANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 13} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL.
 {¶ 14} "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} The First and Second assignments of error raise essentially the same issue — whether there is sufficient evidence in the record to support Sears's conviction. The only difference is that the issue presented by the Second Assignment of Error requires an evidentiary analysis limited to the evidence presented by the State, since the motion for a judgment of acquittal under the authority of Crim. R. 29 was made at the *Page 5 
close of the State's evidence.
 {¶ 16} R.C. 2913.02(A)(2), which proscribes the offense of which Sears was convicted, provides as follows:
 {¶ 17} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 18} "(1) * * *;
 {¶ 19} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 20} "* * *"
 {¶ 21} The testimony of Parham and Grover, before the State rested its case-in-chief, established that Sears took, and cashed, a check from Parham as down payment for a remodeling job in Parham's basement; that Sears appeared on the premises, either in person or through Rodgers, just one day, shortly after the contract was signed; that Sears failed to complete any items of work in the contract; that Sears told Grover he had underbid the job; that Sears told Grover he would either renegotiate the contract with Parham, or return the $800 to Parham; and that Sears neither renegotiated the contract, returned the $800 to Parham, nor performed any item of work, for two years after cashing Parham's check.
 {¶ 22} A reasonable finder of fact could conclude, from these facts, that Sears, with the purpose of depriving Parham of $800, obtained that sum of money from Parham upon the understanding that he would perform remodeling work for Parham, and then, without making any meaningful effort to do so, kept the $800, beyond *Page 6 
Parham's consent in surrendering the check to Sears. Significantly, Parham testified that when he gave Sears the check, he told Sears not to cash the check" * * * unless you're ready to go ahead and start it [the work]."
 {¶ 23} To be sure, after the State rested, Sears presented some testimony in his own defense. But Sears's testimony was not only in conflict with Parham's testimony, it was also in conflict with the testimony of Grover, the investigator for the Ohio Division of Financial Institutions. The jury was entitled to credit the testimony of Grover and Parham, and discredit Sears's testimony.
 {¶ 24} Parham's testimony was subject to some confusion and inability to remember details, which is not surprising after a lapse of about two years. But Parham's testimony is not incredible. He consistently testified that he gave Sears his check for $800, that he told Sears not to cash the check until he was ready to start work, and that the other contract document was a proposal for additional work that was not entered into at the time the contract at issue was entered into (which Sears, at one point in his testimony, corroborated), that none of the items in the contract were ever completed, and that Sears never offered to renegotiate the contract or return the $800.
 {¶ 25} We conclude that the judgment of the trial court is supported by the evidence, that the trial court did not err in overruling Sears's motion for judgment of acquittal, and that the judgment is not against the manifest weight of the evidence. Accordingly, Sears's First, Second, and Third assignments of error are overruled.
 III {¶ 26} Sears's Fourth Assignment of Error is as follows: *Page 7 
 {¶ 27} "THE TRIAL COURT COMMITTED ERROR BY FAILING TO DEFINE ALL NECESSARY ELEMENTS OF THE OFFENSES AND DEFENSES IN THE JURY INSTRUCTIONS."
 {¶ 28} Because Sears did not object to the jury instructions as given, Sears acknowledges that he has forfeited all but plain error in the giving of the instructions. Jury instructions do not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Underwood (1983), 3 Ohio St.3d 12, 14, 444
N.E.2d 1332.
 {¶ 29} Sears contends that the jury instructions given in this case are deficient because they fail to define the concept of the scope of the owner's consent, and because they fail to instruct on the defense of mistake of fact.
 {¶ 30} The jury was instructed that the second count required, for conviction, a finding that Sears, with the purpose to deprive Parham of his property, obtained or asserted control over that property "beyond the scope of the expressed or implied consent of the owner." The trial court further instructed the jury concerning express and implied consent:
 {¶ 31} "Express [sic, `consent' seems to have been intended] may be either express or implied. Express consent is determined by the written spoken [sic] word of the persons involved. Implied consent is determined by the facts and circumstances which surround those involved, including their words and acts from which you may infer that consent was given to the Defendant."
 {¶ 32} In closing arguments, each side addressed the issue of whether Sears's *Page 8 
continued possession of Parham's $800 was within the scope of the consent Parham had given. Neither side seemed to believe that a jury instruction was required to assist the jury in determining what is meant by the scope of consent. We conclude that it is unlikely that the outcome of this trial would have been different if the trial court had attempted to define for the jury what is meant by the scope of consent. Therefore, the test for plain error is not met.
 {¶ 33} The jury was properly instructed that a conviction on the second count would require a finding that Sears had the specific intent, by his acts, to deprive Parham of his property. Sears did not argue that his conduct in taking and cashing Parham's check without performing the contract was the result of a mistake. His argument was that Parham saw an opportunity, because Sears had not kept a copy of the contract (which Parham denied), to take advantage of Sears by adding additional work to the project at no additional cost to Parham. Sears's only reference to "mistake" in his closing argument was not to a mistake of fact, in the sense of the affirmative defense of mistake of fact, but to his mistake in not keeping a copy of the contract, to prevent Parham from taking advantage of him.
 {¶ 34} The result of the arguments of the parties was that the jury was presented with a decision of which witness to believe, Parham or Sears. The issue of a mistake of fact on Sears's part, thereby explaining his conduct in taking the money and not performing the contract, was not argued. Accordingly, we find it unlikely that the outcome of this trial would have been different had the jury been instructed on the mistake-of-fact defense. No plain error is demonstrated on this record.
 {¶ 35} Sears's Fourth Assignment of Error is overruled. *Page 9 
 IV {¶ 36} All of Sears's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and DONOVAN, JJ., concur.
Copies mailed to:
R. Lynn Nothstine
 Hon. Mary L. Wiseman *Page 1